Filed 9/21/23  P. v. Mendez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALAN GUSTAVO MENDEZ,<br><br>    Defendant and Appellant. | F084894<br><br>(Super. Ct. No. MCR063914A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

J.M. Malik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Darren K. Indermill and Jessica A. Perkins, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Appellant and defendant Alan Gustavo Mendez appeals following his conviction by plea and sentencing for voluntary manslaughter with personal use of a firearm. Based on the 2022 amendments to Penal Code sections 1385 and 1170[1] under Senate Bill No. 81 and Senate Bill No. 567,[2] which were effective prior to his entry of plea, defendant advances several challenges to the maximum 32-year sentence imposed. However, the sentence he complains of was imposed within the range contemplated by the plea agreement and he did not obtain a certificate of probable cause. (§ 1237.5.) Therefore, we issued an order granting the parties an opportunity to file supplemental briefs addressing this issue. (Gov. Code, § 68081.)

As the California Supreme Court recognized in *Stamps*, "[w]hether an appeal challenges the validity of the plea itself, requiring a certificate, or seeks merely to correct alleged postplea error can be a nuanced question." (*People v. Stamps* (2020) 9 Cal.5th 685, 696 (*Stamps*).) As explained herein, we conclude that defendant's appeal raises both certificate and noncertificate grounds. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1104 (*Mendez*) [a notice of appeal stating grounds that do not require certificate of probable cause may not be used to obtain review of claims requiring certificate]; Cal. Rules of Court, rule 8.304(b).)[3] We dismiss the claims raising grounds that require a certificate of probable cause for lack of jurisdiction, and we dismiss the claims raising noncertificate

---

[1] All further references are to the Penal Code unless otherwise stated.

[2] Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81) amended section 1385, and Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) amended section 1170, effective January 1, 2022. Both statutes were amended again, but those amendments are not relevant to the issues raised in this appeal. (Assembly Bill No. 200 (2021–2022 Reg. Sess.) (Assembly Bill 200) [amending § 1385, eff. June 30, 2022]; Assembly Bill No. 960 (2021–2022 Reg. Sess.) (Assembly Bill 960) [amending § 1170, eff. Jan. 1, 2023].) The Legislature also recently made nonsubstantive changes to numerous code sections as part of a code maintenance bill, including sections 1170 and 1385. (Assem. Bill No. 1754, approved by the Governor July 27, 2023 (2023–2024 Reg. Sess) Stats. 2023, ch. 131, §§ 155, 160, eff. Jan. 1, 2024.)

[3] All further references to rules are to the California Rules of Court.

grounds as forfeited for failure to object in the trial court.  Finally, we reject defendant's claim that trial counsel's failure to object constituted ineffective assistance of counsel (IAC).  Accordingly, this appeal is dismissed.

## PROCEDURAL BACKGROUND

In February 2019, Sergio Lopez was found shot to death outside an abandoned residence in Madera County.  Defendant was arrested for murder months later and, following the preliminary hearing in July and August 2020, was charged by information with one count of murder with sentence enhancement allegations for personal and intentional discharge of a firearm and for personal use of a firearm.  (§§ 187, subd. (a), 12022.53, subd. (d), 12022.5, subd. (a).)  The information also alleged that defendant had one prior serious or violent felony conviction within the meaning of the "Three Strikes" law.  (§§ 667, subds. (a)(1), (b)–(i), 1170.12, subds. (a)–(d).)

In March 2022, the parties reached a plea agreement pursuant to which the prosecutor added one count of voluntary manslaughter, and agreed to dismiss the murder count, the firearm enhancement allegation under section 12022.53, subdivision (d), and the prior serious felony conviction enhancement allegation under section 667, subdivision (a)(1), which had exposed defendant to a potential aggregate term of between 60 and 80 years to life in prison.  In exchange, defendant pleaded guilty to voluntary manslaughter and admitted he personally used a firearm in the commission of the felony. (§§ 192, subd. (a), 12022.5 subd. (a).)  He also admitted the prior strike conviction.  The parties agreed the maximum sentence the trial court could impose was 32 years, which was the upper term of 11 years for voluntary manslaughter, doubled to 22 years under the Three Strikes law, and an upper term of 10 years for the firearm enhancement. Defendant waived his right to a jury trial on aggravating sentencing factors, and the plea agreement reserved to the parties the right to argue the issue of discretionary sentencing

choices. The parties agreed the factual basis for the plea was the preliminary hearing transcript and defendant did not enter a *Harvey* waiver.[4]

In August 2022, the trial court sentenced defendant. After the parties made their respective arguments, with the prosecutor seeking the 32-year maximum term and defendant arguing for something lesser, the trial court imposed the 32-year maximum sentence contemplated by the plea bargain.

Defendant filed a timely notice of appeal, but did not obtain a certificate of probable cause. (§ 1237.5.) Senate Bill 81 and Senate Bill 567 were in effect when defendant entered his plea and was sentenced, and this appeal does not involve a retroactive application of ameliorative changes in the law under the *Estrada* rule. (*In re Estrada* (1965) 63 Cal.2d 740.) However, defendant claims that because the 10-year firearm enhancement resulted in a sentence that exceeds 20 years, dismissal of the enhancement was mandated by section 1385, subdivision (c)(2)(C). Alternatively, if this court finds dismissal of the enhancement is not mandatory, he claims that under section 1385, subdivision (c)(2), the trial court erred in failing to "consider and afford *great weight* to" the mitigating circumstance that his resulting sentence would exceed 20 years, and the court failed to evaluate whether "dismissal of the enhancement would endanger public safety," entitling him to remand for resentencing. Relatedly, defendant also claims that his trial counsel's "failure to seek the maximum leniency" on his behalf constituted IAC. Finally, defendant claims that under section 1170, the trial court

---

[4] In *Harvey*, the California Supreme Court held that a trial court may not consider facts underlying dismissed counts for the purpose of aggravating or enhancing a defendant's sentence. (*People v. Harvey* (1979) 25 Cal.3d 754, 758 (*Harvey*).) "A *Harvey* waiver permits the sentencing court to consider the facts underlying dismissed counts and enhancements when determining the appropriate disposition for the offense or offenses of which the defendant stands convicted." (*People v. Munoz* (2007) 155 Cal.App.4th 160, 167, citing *People v. Moser* (1996) 50 Cal.App.4th 130, 132–133.)

considered improper factors in aggravating his terms and the error was prejudicial, entitling him to remand for resentencing.[5]

The People contend that defendant forfeited his claims of sentencing error under section 1385 by failing to object and, on the merits, the court did not abuse its sentencing discretion. With respect to section 1170, the People contend the court did not abuse its discretion in selecting and imposing upper terms, and any reliance on aggravating factors not established by the preliminary hearing transcript was harmless.

After briefing was complete, we issued an order permitting the parties to file supplemental letter briefs addressing whether this court has jurisdiction over defendant's appeal in the absence of a certificate of probable cause (§ 1237.5), and, if so, whether defendant's claims challenging the sentence imposing the maximum term contemplated by the plea agreement are waived (*People v. Hester* (2000) 22 Cal.4th 290, 295 (*Hester*)). Defendant takes the position that this court has jurisdiction over his appeal because, under the reasoning of *People v. Buttram* (2003) 30 Cal.4th 773, 787 (*Buttram*), he does not need a certificate of probable cause. He also maintains that *Hester* does not apply because he is not challenging his sentence as unauthorized, and that he did not waive his claims but if we find waiver, we should nevertheless exercise our inherent discretion to reach the claims.

The People contend that this court lacks jurisdiction over the appeal under *People v. Shelton* (2006) 37 Cal.4th 759, 769 (*Shelton*), but, in the alternative, defendant's challenge to his sentence is waived because it was imposed pursuant to the parties' plea bargain.

As explained below, we conclude that this appeal advances both grounds that require a certificate of probable cause and grounds that do not require a certificate of

---

[5]     Defendant does not specifically cite section 1170.1, which pertains to the selection of enhancement terms. Given the nature of the arguments he raises, we will construe his appeal broadly to include the issue.

probable cause. Defendant's first claim, challenging the trial court's legal authority to impose the firearm enhancement under section 1385, is barred by his failure to obtain a certificate of probable cause. We interpret defendant's second claim, also pertaining to section 1385, as raising an issue that is barred absent a certificate of probable cause. However, to the extent the claim is arguably limited to challenging the trial court's exercise of its inherent sentencing discretion to strike enhancements, the claim is forfeited for failure to object and there are no grounds supporting a viable claim of IAC, whether based on counsel's failure to object or, as argued in claim three, counsel's failure to seek maximum leniency.[6] Finally, we conclude that claim four, challenging the court's exercise of its discretion in imposing upper terms under sections 1170 and 1170.1 raises noncertificate grounds, but it is forfeited for failure to object and no IAC claim lies. Therefore, defendant's appeal is dismissed.

## DISCUSSION

## I.      Challenge to Failure to Strike Firearm Enhancement Under Section 1385

### A.      Certificate of Probable Cause Requirement Under Section 1237.5

"The right to appeal is statutory only, and a party may not appeal a trial court's judgment, order or ruling unless such is expressly made appealable by statute." (*People v. Loper* (2015) 60 Cal.4th 1155, 1159.) "Generally, a defendant may appeal 'from a final judgment of conviction.' (Pen. Code, § 1237, subd. (a).) However, if the judgment resulted from a guilty or no contest plea, Penal Code section 1237.5, subdivisions (a) and (b), provide that no appeal may be taken unless '[t]he defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable

---

**6**      """"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' [Citations.]""" (*People v. McKinnon* (2011) 52 Cal.4th 610, 636, fn. 16, quoting *People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6.) In this case, as discussed, defendant's failure to object forfeits review of select claims. However, the principle of waiver explains the absence of objection. (*Hester, supra*, 22 Cal.4th at p. 295.)

constitutional, jurisdictional, or other grounds going to the legality of the proceedings,' and the court 'has executed and filed a certificate of probable cause for such appeal with the clerk of the court.' '[S]ection 1237.5 admits of this exception: The defendant may take an appeal without a statement of certificate grounds or a certificate of probable cause if he does so solely on noncertificate grounds, which go to postplea matters not challenging his plea's validity and/or matters involving a search or seizure whose lawfulness was contested pursuant to section 1538.5.' (*People v. Mendez* (1999) 19 Cal.4th 1084, 1096; see *People v. Panizzon* (1996) 13 Cal.4th 68, 74 (*Panizzon*); Cal. Rules of Court, rule 8.304(b)(4).) A certificate of probable cause functions to discourage frivolous appeals following a guilty or no contest plea. It promotes judicial economy by screening out baseless postplea appeals before time and money are spent on record preparation, briefing and appellate review. (See *Panizzon*, at pp. 75–76.)

"'It has long been established that issues going to the validity of a plea require' a certificate of probable cause. (*Panizzon, supra*, 13 Cal.4th at p. 76.) 'Even when a defendant purports to challenge only the sentence imposed, a certificate … is required if the challenge goes to an aspect of the sentence to which the defendant agreed as an integral part of a plea agreement.' (*People v. Johnson* (2009) 47 Cal.4th 668, 678 (*Johnson*).) '[T]he critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the [certificate] requirements of section 1237.5.' (*Panizzon*, at p. 76.)" (*Stamps, supra*, 9 Cal.5th at p. 694, fn. omitted.) In sum, "when the parties reach an agreement in the context of existing law, a claim that seeks to avoid a term of the agreement, as made, is an attack on the plea itself." (*Id.* at p. 695.) However, "'where the terms of the plea agreement leave issues open for resolution by litigation, appellate claims arising within the scope of that litigation do not attack the validity of the plea, and thus do not require a certificate of probable cause.'" (*Id.* at p. 698, quoting *Buttram, supra*, 30 Cal.4th at p. 783.)

## B.    Section 1385 as Amended by Senate Bill 81

Following amendment by Senate Bill 81, section 1385, subdivisions (a) through (c)(2), provides, in relevant part:[7]

> "(a)    The judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed.  The reasons for the dismissal shall be stated orally on the record.  The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter.  A dismissal shall not be made for any cause that would be ground of demurrer to the accusatory pleading.

> "(b) [¶] (1)    If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a).

> "(2)    This subdivision does not authorize the court to strike the additional punishment for any enhancement that cannot be stricken or dismissed pursuant to subdivision (a).

> "(c) [¶] (1)    Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2)    In exercising its discretion under this subdivision, *the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety*.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.

> "(A)    Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745.

---

[7]    In briefing, defendant notes that section 1385 was amended again after Senate Bill 81.  However, Assembly Bill 200, addressed in footnote 2, made technical, nonsubstantive changes.

"(B)   Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C)   *The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed*.

"(D)   The current offense is connected to mental illness.

"(E)   The current offense is connected to prior victimization or childhood trauma.

"(F)   The current offense is not a violent felony as defined in subdivision (c) of Section 667.5.

"(G)   The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.

"(H)   The enhancement is based on a prior conviction that is over five years old.

"(I)   Though a firearm was used in the current offense, it was inoperable or unloaded."  (Italics added.)

## C.   Claim Section 1385, Subdivision (c)(2)(C), Mandates Dismissal of Firearm Enhancement

First, defendant claims that under section 1385, subdivision (c)(2)(C), the court was *required* to dismiss the firearm enhancement because imposition of the enhancement resulted in a sentence of over 20 years, and he seeks remand with the direction to strike the enhancement.  However, "the specification of a maximum sentence or lid in a plea agreement normally implies a mutual understanding of the defendant and the prosecutor that the specified maximum term is one that the trial court may lawfully impose .…"  (*Shelton, supra*, 37 Cal.4th at p. 768.)  "'"When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement."'"  (*People v. Cuevas* (2008) 44 Cal.4th 374, 383 (*Cuevas*), quoting

*People v. Panizzon* (1996) 13 Cal.4th 68, 80 (*Panizzon*) & citing *Hester, supra*, 22 Cal.4th at p. 295.)

In this case, in exchange for an agreed upon maximum term of 32 years, defendant obtained dismissal of the murder charge, which exposed him to between 30 and 50 years to life; dismissal of the firearm enhancement allegation under section 12022.53, subdivision (d), which exposed him to 25 years to life; and dismissal of the five-year prior serious felony conviction enhancement.  "By negotiating the reduction and dismissal of these charges, [the] defendant necessarily understood and agreed that he faced a significantly reduced sentence" (*Cuevas, supra*, 44 Cal.4th at pp. 383–384), and "[t]his maximum sentence was 'part and parcel' of the plea bargain the parties negotiated. (*Panizzon, supra*, 13 Cal.4th at p. 78; see [*People v. Young* (2000)] 77 Cal.App.4th [827,] 832 ['by attacking the maximum term, [the] defendant seeks to void a term of the agreement to which both parties agreed to abide … '].)  Thus, by challenging the negotiated maximum sentence imposed as part of the plea bargain, [the] defendant is challenging the validity of his plea itself.  (*Panizzon, supra*, 13 Cal.4th at p. 79; *People v. Young, supra*, 77 Cal.App.4th at p. 832.)"  (*Id.* at p. 384, fn. omitted.)  Here, the claim that the trial court was *required* by law to dismiss the firearm enhancement under section 1385, subdivision (c)(2)(C), is an "attack [on] the plea bargain as defective *when it was made* because it permitted a sentence prohibited by statute."  (*Stamps, supra*, 9 Cal.5th at p. 695.)  Therefore, the claim is barred absent a certificate of probable cause. (*Cuevas, supra*, at p. 384; accord, *Shelton, supra*, 37 Cal.4th at pp. 769–771.)  Defendant did not obtain a certificate of probable cause and his appeal as to this issue is dismissed for lack of jurisdiction.  (*Mendez, supra*, 19 Cal.4th at p. 1104; rule 8.304(b).)

### D. Failure to Make Public Safety Endangerment Finding and to Afford Great Weight to Mitigating Circumstances

#### 1. Certificate of Probable Cause Required

Defendant next claims that even if dismissal of the firearm enhancement was not mandatory based on sentence length under section 1385, subdivision (c)(2)(C), "[Senate Bill] 81 created a rebuttable presumption that *obligates* a court to dismiss an enhancement when a mitigating circumstance is present, *unless* the court finds that dismissal of the enhancement would endanger public safety" (italics added), and the court is *required* to "afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) through (I) are present" (§ 1385 subd. (c)(2)).[8] As previously stated, "[w]hether an appeal challenges the validity of the plea itself, requiring a certificate, or seeks merely to correct alleged postplea error can be a nuanced question[, and d]efendants who lack a required certificate may structure their appellate arguments to try and obviate the need for one." (*Stamps, supra*, 9 Cal.5th at p. 696.) In this instance, as we interpret defendant's argument, even if the trial court was not required to dismiss the firearm enhancement because it resulted in a sentence of over 20 years, it was nevertheless *required* to dismiss the enhancement *unless* it found dismissal would endanger public safety, which it failed to do. Additionally, the court failed to afford the mitigating factor under section 1385, subdivision (c)(2)(C), *any* weight.

Advancing an interpretation of section 1385, subdivision (c)(2), as mandating dismissal of the enhancement absent affording the mitigating circumstance great weight

---

[8] The California Supreme Court granted review in *Walker* to decide the question of whether the requirement that trial courts afford great weight to mitigating circumstances under section 1385, subdivision (c)(2)(C), creates a rebuttable presumption in favor of dismissal absent a finding that dismissal would endanger public safety. (Compare *People v. Walker* (2022) 86 Cal.App.5th 386, 391 [the "mandate to 'afford great weight' to mitigating circumstances erects a rebuttable presumption that obligates a court to dismiss the enhancement unless the court finds that dismissal of that enhancement—with the resultingly shorter sentence—would endanger public safety"], review granted Mar. 22, 2023, S278309 with *People v. Ortiz* (2023) 87

and expressly finding dismissal would endanger public safety appears, at its core, to be an attack on the trial court's *legal* authority to impose the maximum sentence bargained for.[9] Such a claim is barred for lack of jurisdiction absent a certificate of probable cause. (*Stamps, supra*, 9 Cal.5th at p. 696.)

### 2. Forfeiture Doctrine Applies to Extent Claim Construed as Challenging Only Court's Exercise of Inherent Sentencing Discretion

However, to the extent that defendant's argument may be reasonably construed otherwise, bringing it within the ambit of a claim limited to challenging "only the court's postplea exercise of its sentencing discretion" (*Stamps, supra*, 9 Cal.5th at p. 698), the claim is forfeited because trial counsel did not object on the grounds now advanced on appeal.

"'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial. [Citation.] The rule applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor,

---

Cal.App.5th 1087, 1098, review granted Apr. 12, 2023, S278894 [declining to follow *Walker* and concluding that "to require the trial court to dismiss an enhancement absent a finding that dismissal would endanger public safety would divest the trial court of its ultimate discretion under the statute to determine what is in furtherance of justice, considering all relevant factors"].) In this case, we express no view on the matter because we do not reach the merits of defendant's argument.

[9] Subdivision (c)(2) of section 1385 expressly applies to the mitigating circumstances enumerated in subdivisions (A) through (I), which, in this case, is limited to subdivision (c)(2)(C), providing, "The application of an enhancement could result in a sentence of over 20 years." Defendant also refers to mitigating and aggravating circumstances under rules 4.421 and 4.423, as set forth by defense counsel in the sentencing memorandum, but the relevance of those goes to the broader, more general determination whether it is in the furtherance of justice to dismiss an enhancement under section 1385, subdivision (c)(1).

misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons ….""" (*People v. Scott* (2015) 61 Cal.4th 363, 406.)

Defendant advances several reasons why we should not apply the forfeiture doctrine in this case. First, defendant relies on the principle that """[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence.""" (*People v. Perez* (2020) 9 Cal.5th 1, 7–8 [applying exception to excuse failure to object to expert witness testimony relating hearsay, prior to paradigm shifting decision in *People v. Sanchez* (2016) 63 Cal.4th 665].) Defendant was sentenced more than seven months after the effective date of Senate Bill 81, however, and the statutory language underpinning the claim advanced on appeal—that the trial court abused its discretion by failing to make a finding that dismissal of the enhancement would endanger public safety and failing to give great weight to the circumstance that application of the enhancement would result in a sentence of over 20 years—appears on the face of the statute. Furthermore, "[a]bsent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.) This is simply not a situation where later cases interpreting the statute created a sea change in the law or where requiring """"an objection "would place an unreasonable burden on [counsel] to anticipate unforeseen changes in the law …."""" (*People v. Perez, supra*, at p. 8; compare *People v. Montes* (2021) 59 Cal.App.5th 1107, 1119 [in context of ability to pay fees and fines, decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 "constituted a marked departure from existing law"] with *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1053–1054 [*Dueñas* did not announce a new rule of law].)

Defendant also advances a policy argument that "forfeiture under these circumstances betrays the reality of indigent representation in busy California trial courts," and "it is simply not the norm to mount frontal attacks of first impression, not backed by directly binding authority, in each and every case." Finally, defendant asserts

13.

that "arguably, only the sentencing court could have known if application of the firearm enhancement would lead to a sentence longer than 20 years because [the] sentencing range was vast with four of the eight available options leading to sentences less than 20 years in length," and that in any event, we have discretion to overlook his failure to object.

We are unpersuaded by these arguments. "'[D]iscretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue'" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887–888, fn. 7), and "'[w]hen a defendant maintains that the trial court's sentence violates rules which would have required the imposition of a more lenient sentence, yet the defendant avoided a potentially harsher sentence by entering into the plea bargain, it may be implied that the defendant waived any rights under such rules by choosing to accept the plea bargain'" (*Hester, supra*, 22 Cal.4th at p. 295).[10] Further, the sentencing possibilities in this case were limited and noncomplex, and the record expressly reflects that defense counsel was aware of the various possible configurations, from a minimum of nine years to a maximum of 32 years.

Finally, defendant's policy argument lacks force given the context in which his sentence was imposed. Defendant was aware the maximum possible sentence was 32 years, he agreed to the term, and he did not object to the trial court's discretionary sentencing choices he now seeks to challenge on appeal. He benefitted significantly from

---

[10] "Fundamental jurisdiction is, at its core, authority over both the subject matter and the parties" (*People v. Chavez* (2018) 4 Cal.5th 771, 780; accord, *People v. Ford* (2015) 61 Cal.4th 282, 286–287), and "such jurisdiction *cannot* be conferred by acts or omissions of the parties" (*People v. Chavez, supra*, at p. 780, italics added). In contrast and relevant here, "[e]ven when there is no question that a court's action is well within the scope of its fundamental jurisdiction, the court may still exceed constraints placed on it by statutes, the Constitution, or common law. [Citation.] When a trial court fails to act within the manner prescribed by such sources of law, it is said to have taken an ordinary act in excess of jurisdiction. [Citation.] Such 'ordinary' jurisdiction, unlike fundamental jurisdiction, *can* be conferred by the parties' decisions—such as a decision not to object to any perceived deficiency—and so is subject to defenses like estoppel, waiver, and consent." (*Ibid.*, fn. omitted, italics added; accord, *People v. Ford, supra*, at pp. 286–287.)

14.

the plea agreement through the dismissal of the murder charge and the more serious firearm enhancement allegation, which together exposed him to a possible sentence of between 55 to 75 years to life. As *Hester* explained in the context of forfeiture, which generally does *not* apply to bar claims a sentence is unauthorized, "[t]he rule that defendants may challenge an unauthorized sentence on appeal even if they failed to object below is itself subject to an exception: Where the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process." (*Hester, supra*, 22 Cal.4th at p. 295.)

### 3. IAC Claim

Nor will trial counsel's failure to object, or failure to argue for leniency as set forth in defendant's briefs, support a claim of IAC. To prevail on a constitutional claim of IAC, defendant "'must satisfy a two-pronged showing: that counsel's performance was deficient, and that [he] was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.'" (*People v. Woodruff* (2018) 5 Cal.5th 697, 736, quoting *People v. Alexander* (2010) 49 Cal.4th 846, 888; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

"[A] defendant's burden [is] 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on [IAC] on direct appeal only if there is affirmative evidence that counsel had ""no rational tactical purpose"" for an action or omission." (*People v. Mickel* (2016) 2 Cal.5th 181, 198, quoting *People v. Lucas* (1995) 12 Cal.4th 415, 437.) "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" (*Strickland v. Washington, supra*, 466 U.S. at p. 690; accord, *People v. Barrett* (2012) 54

15.

Cal.4th 1081, 1105.) "'[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish [IAC].'" (*People v. Carrasco* (2014) 59 Cal.4th 924, 985, quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) Given defendant's initial exposure to an indeterminate life sentence and the parties' express intent to bargain for a significantly more favorable maximum determinate term of 32 years, defendant cannot meet his burden of demonstrating that trial counsel's failure to object to the court's discretionary sentencing choices lacked a rational tactical purpose. To the contrary, counsel secured a favorable plea agreement to which defendant consented, which implies waiver of the right to challenge the court's violation of sentencing rules. (*Hester, supra*, 22 Cal.4th at p. 295.) It is untenable to posit that effective assistance of counsel requires trial counsel to jeopardize the plea agreement the parties reached with his or her client's assent by objecting that the court lacks authority under the law to impose the agreed-upon sentence.

## II. Challenge to Selection of Upper Terms

### A. Sections 1170 and 1170.1 as Amended By Senate Bill 567

Following amendment by Senate Bill 567, section 1170 provides, in relevant part, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (*Id.*, subd. (b)(1).) "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." *Id.*, subd. (b)(2).)

Further, defendant was 25 years old at the time of the crime, and "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall

order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6)(A)–(B); see § 1016.7, subd. (b) ["A 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed."].)

With respect to enhancements, section 1170.1, subdivision (d), provides, "(1) When the court imposes a sentence for a felony pursuant to Section 1170 or subdivision (b) of Section 1168, the court shall also impose, in addition and consecutive to the offense of which the person has been convicted, the additional terms provided for any applicable enhancements. If an enhancement is punishable by one of three terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2). [¶] (2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

### B. Procedural Background

The parties filed sentencing briefs in this case, and defendant identified the following mitigating circumstances: he "was [arguably] a passive participant or played a minor role in the crime"; "[t]he victim was [arguably] an initiator or, willing participant in, or the aggressor or provoker of the incident"; he was "under 26 years of age at the time of the commission of the offense"; he "voluntarily acknowledged wrongdoing before arrest or at an early stage of the criminal process"; and multiple enhancements

were alleged.[11]  (Rule 4.423(a)(1)–(2), (b)(6), (b)(11).)  Defendant also identified as mitigating circumstances that he was a high school graduate who had an above-average grade point average, played a sport, and earned several awards; he maintained employment after graduation; he completed several courses following his arrest; and he has family support.  (*Id.*, (c).)

The People conceded age as a mitigating circumstance and identified the following aggravating circumstances:  "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"; "[t]he defendant was armed with or used a weapon at the time of the commission of the crime"; "[t]he victim was particularly vulnerable"; "[t]he defendant has engaged in violent conduct that indicates a serious danger to society"; "[t]he defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness"; "[t]he defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed"; and "[t]he defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory."  (Rule 4.421(a)(1)–(3), (b)(1)–(2), (b)(4)–(5).)

At sentencing, the trial court, sitting as the factfinder pursuant to the parties' plea agreement, expressly found four aggravating circumstances and only one mitigating circumstance.  The court found the crime involved great violence, great bodily harm, or acts disclosing a high degree of cruelty and callousness; and the victim was particularly vulnerable because he was not from the area, there was no indication he knew the area, and he was taken to a field where he was executed, taking bullets to his back and the back

---

**11**    Only one conviction and one enhancement were at issue during sentencing, and defense counsel neglected to list rule 4.423(b)(10), which provides that "[a]pplication of an enhancement could result in a sentence over 20 years" is a mitigating factor.  Therefore, it appears counsel may have inadvertently cited to multiple enhancements under rule 4.423(b)(11) rather than to sentence length under rule 4.423(b)(10).

18.

of his head. (Rule 4.421(a)(1)–(3).) The court also found that defendant's admitted use of a firearm was violent conduct that indicated a serious danger to society, and that defendant was on probation at the time of the crime. (*Id.*, (b)(1), (b)(4).) The court expressly rejected defendant's arguments that he was a passive participant and the victim was the aggressor or provoked the incident, but the court noted defendant's age as a mitigating circumstance.

Defendant now argues that the trial court was precluded from "impos[ing] an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law" (§ 1170, subd. (b)(5); accord, rule 4.420(g)), and "[a] fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term" (citing rule 4.420(h); *People v. Scott* (1994) 9 Cal.4th 331, 350). He contends that the court relied on 10 factors to aggravate his sentence and reliance was improper as to four circumstances because they were not supported by the preliminary hearing transcript. He also argues that great bodily harm is an element of manslaughter, a high degree of cruelty and callousness is arguably an element of manslaughter, and his use of a firearm is an element of the firearm enhancement.

We note that defendant reaches the figure of 10 aggravating factors by parsing the court's comments into discrete factors. We do not agree with this characterization of the record. The court identified four factors enumerated in rule 4.421 and discussed the reasons underlying its selection of those four factors. Regardless, we find the claim of error forfeited.

## C.     Claim of Sentencing Error Forfeited

The plea agreement expressly reserved to the parties the right to argue the issue of term selection by the trial court. In this instance, given the existence of multiple aggravating factors and the preliminary hearing evidence,[12] we do not interpret

---

[12]     There is no dispute defendant was on probation at the time of the crime, and the parties stipulated that if called to testify at the preliminary hearing, the pathologist would testify that the

defendant's argument as challenging the court's legal authority to aggravate his sentence "because it permitted a sentence prohibited by statute." (*Stamps, supra*, 9 Cal.5th at p. 695.) Therefore, a certificate of probable cause is not required to pursue this claim. (*Id.* at p. 698.)

Turning to whether defendant objected on the grounds now advanced on appeal, the parties made their respective arguments and defendant took the position that the aggravating factors did not predominate. He pointed out several statements in the probation report that did not reflect facts supported by evidence from the preliminary hearing, a point the prosecutor conceded, and he argued generally that a dual use of facts is improper and that the court should decline, based on the prosecutor's arguments, to speculate about what occurred. He did not specifically object on the grounds now advanced on appeal, either before or after the trial court stated its reasons for selecting upper terms on the record. Absent a specific objection that places the trial court and the prosecutor on notice as to the grounds now advanced on appeal, the claim the trial court erred in imposing upper terms for manslaughter and for personal use of a firearm is forfeited.

Because the changes effected by both Senate Bill 81 and Senate Bill 567 were in effect prior to the plea and sentencing, we emphasize the "[s]trong policy reasons support[ing] this rule: 'It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided. [Citations.]' [Citation.] " " " "The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be

_____

victim had six gunshot wounds, all back-to-front in his upper body, with one to the back of his head and one below his right ear. There was also evidence at the preliminary hearing that defendant stated he assassinated the victim, the victim lived in the Los Angeles area and had rented a car there with a return date two days later, and the victim's body was found in a field outside an abandoned residence.

20.

silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal."'" [Citation.]'" (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; accord, *People v. Salazar* (2016) 63 Cal.4th 214, 239–240; *People v. French* (2008) 43 Cal.4th 36, 46.) Notably, most cases in this state resolve by plea (*People v. Flores* (2022) 77 Cal.App.5th 420, 446), and absent a change in the law that applies retroactively (*Stamps, supra*, 9 Cal.5th at pp. 698–699), or an extenuating circumstance (e.g., *People v. Perez, supra*, 9 Cal.5th at pp. 7–8), the policy reasons underlying the forfeiture doctrine fully support its application where a defendant remains silent in the trial court when sentenced and then seeks to rely on sentencing laws that were in effect and of which he was aware when the plea agreement was reached to obtain appellate relief.

As discussed in part I.D.3. of the Discussion, given that this case was resolved by plea bargain for a significantly more favorable sentence than defendant risked if convicted as charged, defense counsel's tactical decision to argue the issues but not object to the court's selection of aggravating factors as an abuse of discretion or on any other ground calling into question the court's authority to impose the sentence was eminently reasonable and will not support a claim of IAC. Accordingly, we dismiss this claim.

**DISPOSITION**

As set forth in this opinion, defendant's appeal is dismissed in its entirety as follows: the sentencing claims that require a certificate of probable cause under section 1237.5 are dismissed for lack of jurisdiction and the remaining sentencing claims

21.

that do not require a certificate of probable cause are dismissed on the ground of forfeiture.

MEEHAN, J.

WE CONCUR:

LEVY, Acting P. J.

DeSANTOS, J.

22.